*Park Plus, Inc. v. Palisades of Towson, LLC and Encore Development Corp.*, No. 7, September Term, 2021.  Opinion by Gould, J.

**ARBITRATION – STATUTE OF LIMITATIONS**

Section 5-101 of the Courts and Judicial Proceedings Article ("CJ") of the Maryland Annotated Code provides "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  A petition to compel arbitration under CJ § 3-207 is not a "civil action at law." Thus, without language in the arbitration agreement providing otherwise, a petition to compel arbitration is not subject to a defense under CJ § 5-101.

Circuit Court for Baltimore County
Case No.: 03-C-16-001349
Argued: October 8, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 7

September Term, 2021

_____

PARK PLUS, INC.

v.

PALISADES OF TOWSON, LLC
and ENCORE DEVELOPMENT CORP.

_____

Getty, C.J.
Watts
Hotten
Booth
Biran
Gould
Raker, Irma S.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Gould, J.

_____

Filed: March 25, 2022

 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Private agreements to arbitrate future disputes are now commonplace. Variations in such agreements are many because, as with other contracts, parties are free to structure an arbitration process to suit their needs. Parties can specify in their agreement how to initiate the arbitration process, the number of arbitrators, the identity of the arbitrators, the scope and extent of discovery, the locale of the proceeding, and whether and how far the rules of evidence apply, among other matters.

As in other voluntary relationships, parties entering contracts tend to focus on the future benefits of the transaction, and not so much on what can go wrong. As a result, they don't always consider or foresee all of the pitfalls of arbitration, not the least of which is that cooperation between the parties—when they are quarrelling—may be necessary to start the arbitration process. Parties, therefore, sometimes omit such details from their agreements.

With the growth of arbitration as a favored dispute resolution alternative, private companies offering turnkey arbitration services have emerged. Such services generally have rules of procedure governing every aspect of the process, including how to file a demand for arbitration, service of the arbitration demand on the adverse party, the pleadings required and allowed, the selection of the arbitrators, motions practice, the scope and extent of discovery, hearing procedures, and the form of award. One advantage of such a service is that no cooperation is needed to commence the arbitration proceeding.

When parties agree to arbitrate a dispute, whether they realize it or not, they are also agreeing to curtail the role that courts may play in resolving their dispute. And because arbitration is favored as a matter of public policy, Maryland has a statute—the Maryland

Uniform Arbitration Act ("MUAA")[1]—that defines and limits the court's role in arbitrable disputes. One role is to enforce such agreements.

The Court of Special Appeals ("CSA") recently explored this role in *Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376 (2019). There, the arbitration agreement identified an independent arbitration service—the American Arbitration Association ("AAA")—to administer the arbitration proceeding. *Id.* at 386. Needing no cooperation from the other party, the claimant started the proceedings by filing a demand with the AAA in accordance with its rules. *Id.* at 387. The respondent petitioned the court under the MUAA to stop the arbitration, as barred by the statute of limitations. *Id.* at 388. The trial court denied the petition and ordered the arbitration to proceed. *Id.* at 388-89. The CSA affirmed, finding that waiting beyond the three-year statute of limitations period to demand arbitration was not a waiver of the right to arbitrate. *Id.* at 383, 389.

The matter before us implicates the same question addressed in *Gannett Fleming*, although it comes to us from a different direction. Here, the arbitration agreement did not specify an arbitration service. When the respondent withheld cooperation to start the arbitration proceedings, the claimant enlisted the court's assistance by petitioning to compel arbitration. The respondent opposed the petition, arguing that it was barred by the statute of limitations. After holding an evidentiary hearing, the circuit court rejected the respondent's arguments and ordered the parties to arbitrate their dispute. Relying mainly on *Gannett Fleming*, the CSA affirmed.

---

[1] The MUAA is codified in the Courts and Judicial Proceedings Article of the Maryland Annotated Code ("CJ" or the "Courts Article") (2020) §§ 3-201 *et seq.*

For the reasons explained below, so do we.

## FACTS AND PROCEEDINGS

### *The Contract*

In March 2009, Park Plus, Inc. ("Park Plus") and Palisades of Towson, LLC and Encore Development Corp.[2] (together, "Palisades") executed a contract requiring Park Plus to "furnish and install" an electro-mechanical parking system in a luxury apartment building owned by Palisades in Towson, Maryland (the "contract").[3] The contract included a one-year warranty period. The contract also contained the following arbitration provision:

> 7.1. Any disputes between the OWNER and the CONTRACTOR relating to the execution or progress of the WORK or the interpretation of the Contract Documents shall be referred initially to the ARCHITECT or ENGINEER. The ARCHITECT'S or ENGINEER'S decision shall be binding upon the parties in 7 matters relating to artistic effect. In all other matters, it shall be binding upon the parties unless a demand for arbitration under Paragraph 7.2, below, is made within 30 days after a decision was rendered.
>
> 7.2. Subject to Paragraph 7.1, above, all disputes between parties shall be resolved by arbitration. This agreement to arbitrate shall be specifically enforceable. The award rendered by the arbitrators shall be final and binding on the parties.

---

[2] Palisades of Towson, LLC was the owner of the building and Encore Development Corp. was the "authorized agent" of the owner.

[3] As discussed below, the circuit court held an evidentiary hearing on Palisades' petition to compel arbitration and made findings of fact and conclusions of law. Neither party has contended on appeal that the court's factual findings were unsupported by the evidence. Thus, our recitation of the facts—which is limited to those facts necessary to frame the legal issues before us—is drawn from the circuit court's factual findings and the documents admitted into evidence.

3

### *Problems with the Parking System*

Tenants began using the parking system in October 2010. Problems arose immediately. During the one-year warranty period that expired on July 31, 2011, the parties worked amicably to resolve the problems; indeed, Park Plus kept an employee on-site until September 2011 to "monitor the system and fix problems as they arose," for free. Park Plus then disclaimed any duty to resolve the problems and announced it would charge for ongoing repairs and maintenance. Because of the problems with the parking system, tenants began moving out in August 2011, and a fatal accident with the system occurred in February 2012.

In September 2014, Palisades sent a written arbitration demand to Park Plus. As required by the contract, Palisades then submitted its claims to the project's architect, who declined to participate. Within 30 days of the architect's refusal, Palisades again issued a written arbitration demand to Park Plus. Park Plus showed a willingness to arbitrate, but Palisades filed a petition to compel arbitration in the Circuit Court for Baltimore County. That petition was later dismissed without prejudice for lack of service.

After more delays, the parties agreed to appoint retired Court of Special Appeals Judge James Eyler as their arbitrator.

More delays ensued. Ultimately, when Park Plus failed to "proceed to arbitration as it had agreed to do[,]" in February 2016, Palisades filed its second petition in the Circuit Court for Baltimore County, seeking an order enforcing the arbitration agreement.

4

Park Plus opposed the petition and cross-moved to stay arbitration. The battle in the circuit court was mainly fought over whether a petition to compel arbitration is subject to the statute of limitations provided under Section 5-101 of the Courts Article. Park Plus maintained that CJ § 5-101 applied, and that the three-year period commenced when the breach of contract claim accrued. Thus, Park Plus argued, Palisades' petition was untimely and should be denied.[4]

Palisades argued that there was no deadline in the contract to demand arbitration or petition a court to compel arbitration, and that CJ § 5-101 did not apply to such petitions. Palisades also advanced several arguments on the assumption that CJ § 5-101 did apply. Palisades argued that if the limitations period had commenced when the breach of contract action accrued, then the accrual of the claim was delayed by Park Plus's assurances it would fix the problems, as well as the tolling agreement between the parties.[5] In any event, Palisades contended, it demanded in writing that Park Plus arbitrate their dispute within the three years following the accrual of the cause of action, thus, its petition was timely. Palisades also argued that if CJ § 5-101 applied, the three-year limitations period should

---

[4] The non-exhaustive summary of the parties' respective positions in the circuit court derives from multiple filings by both sides, including those filed in connection with the evidentiary hearing. Only those positions relevant to the issues in this appeal are included here.

[5] On July 30, 2013, Park Plus and Palisades entered into a tolling agreement, agreeing to suspend until July 20, 2014, the running of any limitations period for Palisades' claims against Park Plus related to the parking system.

run from the date Park Plus refused to arbitrate, in which case, Palisades' demand was timely.

The circuit court held an evidentiary hearing and received extensive briefing from the parties. The court did not, however, have the benefit of *Gannett Fleming* or any other Maryland reported decision on the applicability of CJ § 5-101 to petitions to compel arbitration. Ultimately, the court treated the refusal to arbitrate as a separate contractual breach that started the limitations period for petitioning the court to compel arbitration, found the petition timely, and granted Palisades' petition to compel arbitration.

The court made other findings of fact and conclusions of law on the issues raised by the parties, presumably in the interest of judicial economy if later an appellate court disagreed with its analysis. The court found that Palisades' breach of contract claim accrued in August 2011. But, for statute of limitations purposes, the court found that Park Plus's assurances to remedy the problems and the tolling agreement extended the accrual date to September 19, 2011. Applying the three-year limitations period to that accrual date, the court found that Palisades' written demand to Park Plus to arbitrate their dispute was timely.

### *The Arbitration*

While the appeal was pending, the parties proceeded with the arbitration. On March 5, 2020, the arbitrator awarded $3,178,800.64 to Palisades and $365,677.69 to Park Plus on its counterclaim.[6]

---

[6] In 2015, Park Plus brought a counterclaim against Palisades to recover fees for maintenance expenses for the parking system.

On April 24, 2020, Palisades petitioned the Circuit Court for Baltimore County to confirm the arbitration award. Park Plus filed a counter-petition requesting a stay of the proceedings pending the result of this appeal. The parties ultimately entered into a Consent Order under which an arbitration award in favor of Palisades in the net amount of $2,813,122.95 was confirmed, and a stay of entry of the judgment on the award was entered, pending this appeal.

### *The Court of Special Appeals' Unreported Decision*

After oral argument, but before the CSA issued its opinion, the CSA issued its reported decision in *Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376 (2019). Then, in an unreported opinion, the CSA affirmed the circuit court's order compelling arbitration here. *Park Plus, Inc. v. Palisades of Towson, LLC & Encore Dev. Corp.*, No. 1723, Sept. Term, 2017 (filed Feb. 10, 2021). Relying on *Gannett Fleming*, the CSA held that without language in the contract specifying otherwise, CJ § 5-101 does not impose a deadline for petitioning a court to compel arbitration. *Id.* at 9-11. The CSA held that the "right to arbitration was not time-barred by the statute of limitations set forth in [CJ] § 5-101, even if its demand for arbitration was made more than three years after discovering [the] alleged negligence." *Id.* at 8 (quoting *Gannett Fleming*, 243 Md. App. at 389). In so holding, the CSA rejected Park Plus's argument that this Court's decision in *Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185 (2012), compelled a contrary result. *Id.* at 10-11.

7

## *Petition for Certiorari*

Park Plus petitioned for a writ of certiorari, which we granted. *Park Plus, Inc. v. Palisades of Towson, LLC & Encore Dev. Corp.*, 474 Md. 631 (2021). Park Plus presents four questions for our review:

1. Did the courts below err in spurning the principles set forth in *Shailendra Kumar, P.A. v. Dhanda*, 426 Md. 185, 43 A.3d 1029 (2012) (hereinafter "*Kumar*"), in order to justify affirming the Order compelling arbitration here, even though: (a) the Petition to compel arbitration was filed more than four-and-a-half years after the Palisades breach-of-contract claim accrued, (b) the Contract's arbitration agreement <u>did not</u> expressly waive, toll or otherwise modify applicable statutes of limitations, and (c) the MUAA does not exempt arbitrated claims from statutes of limitations? *Petitioner asks this Court to extend the <u>Kumar</u> principles to petitions for binding arbitration, and to hold, contrary to the lower courts, that statutes of limitations apply to claims subject to arbitration except to the extent that the agreement to arbitrate expressly tolls or waives them.*

2. Did the Court of Special Appeals in this action err in following *Gannett Fleming, Inc. v. Corman Construction, Inc.*, 243 Md. App. 376, 220 A.3d 411 (2019), in which another [CSA] panel: (a) *sub silentio* limited the application of *Kumar* to contracts for non-binding arbitration, and (b) held that Md. Code, Cts. & Jud. Proc. § 5-101, which applies to all "civil actions at law," does not govern claims subject to contractual arbitration, on the pretext that the Md. Rule 1-202(a) definition of civil "action" – that is, "collectively all the steps by which a party seeks to enforce any right **in a court**" – does not include court-enforced arbitration? *Petitioner asks this Court to rule that proceedings under the MUAA come within the definition of "action" in Md. Rule 1-202(a), and that the [CSA]'s ruling misread the definition of "action" as if it were limited to "collectively all the steps **in a court** by which a party seeks to enforce any right."*

3. Did the courts below err by treating a petition to compel arbitration as a "claim" with a separate limitations period, rather than as a remedy that must be properly invoked within the applicable limitations period for the substantive claim? *Petitioner asks this Court to rule: (a) that statutes of limitations apply to causes of action, <u>not</u> to remedies or procedures, and (b) that refusal to arbitrate <u>does not</u> create a separate cause of action.*

8

**4.** In the alternative, did the Circuit Court err in failing to defer to the arbitrator the ruling on the substantive statute-of-limitations issue, and thereafter err in confirming the arbitral award, even though the arbitrator had refused to hear the affirmative defense based on the statute of limitations applicable to the Palisades damages claim? *Petitioner therefore asks this Court to rule that the statute of limitations on the Palisades damages claim bars enforcement of the arbitral award.*

## DISCUSSION

Park Plus advances multiple arguments which all boil down to one fundamental proposition: the statute of limitations applicable to Palisades' underlying breach of contract claim should have been applied to Palisades' petition to compel arbitration. Park Plus asserts that, based on the circuit court's findings on the accrual of the breach of contract claim, Palisades' February 2016 petition was untimely. Thus, according to Park Plus, the circuit court went astray when it treated Park Plus's later refusal to arbitrate as a separate breach that triggered a new limitations period for the petition to compel arbitration. Park Plus claims support for its theory in this Court's opinion in *Kumar v. Dhanda*.

Park Plus maintains that by failing to apply the statute of limitations to Palisades' petition to compel arbitration, the circuit court and the CSA implicitly found the parties waived the statute of limitations defense in their contract. Thus, its argument goes, by failing to enforce the statute of limitations here, the circuit court impermissibly re-wrote the parties' contract. In addition, recognizing the court's function is limited to determining whether an arbitration agreement exists, Park Plus equates the statute of limitations to other defenses that go to the existence of an arbitration agreement such as fraud, duress, or

9

unconscionability. According to Park Plus, *Gannett Fleming* was decided incorrectly, and the CSA's reliance on *Gannett Fleming* was reversible error.

### *Standard of Review*

Park Plus raises a purely legal issue — whether petitions to compel arbitration are subject to the limitations period in CJ § 5-101. Legal questions of this kind are reviewed without deference. *Walther v. Sovereign Bank*, 386 Md. 412, 422 (2005).

### *Law and Equity*

In a bygone era, civil cases in Maryland were adjudicated in either a court of law or a court of equity, and the separation between the two courts was "scrupulously maintained in this State." *Higgins v. Barnes*, 310 Md. 532, 540 (1987). An action filed in a court of law was known as a civil action at law; an action filed in an equity court was called an equitable action or an action in equity. *See id.* at 540-41; *see also Merritt v. Craig*, 130 Md. App. 350, 361 (2000).

Whether an action belonged in a court of equity or a court of law depended on the nature of the remedy sought. *Ver Brycke v. Ver Brycke*, 379 Md. 669, 697-98 (2004). The remedy in actions at law was damages. *See id.* at 688, 696; *see also Merritt*, 130 Md. App. at 361. Equity courts, with few exceptions not relevant here, were limited to granting equitable forms of relief. *See Higgins*, 310 Md. at 540-41; *Merritt*, 130 Md. App. at 361; *Mattingly v. Mattingly*, 92 Md. App. 248, 259 (1992).

The separation of courts of law and equity was abolished under the comprehensive changes to the Maryland Rules that took effect on July 1, 1984, *Higgins,* 310 Md. at 534, at which time Maryland recognized "one form of action known as 'civil action.'" Md. Rule

10

2-301. The merger of law and equity merely "eliminate[d] distinctions between law and equity for purposes of pleadings, parties, court sittings, and dockets[,]" *see* Comm. Note to Md. Rule 2-301, but did not erase the substantive distinction between the two actions. *Taylor v. Taylor*, 306 Md. 290, 297 n.6 (1986).

### *The Maryland Uniform Arbitration Act*

When enacting statutes in the pre-merger era, the General Assembly understood the distinction between the courts of law and equity and the remedies available in each. *See Pye v. State*, 397 Md. 626, 637 (2007) ("The General Assembly is presumed to have had full knowledge of [the Court of Appeals'] holding in [a case] when it enacted the legislation. . . ."); *see also* CJ § 1-201(a) (confirming the Court of Appeals' rulemaking authority over the "unification of practice and procedure in actions at law and suits in equity, so as to secure one form of civil action and procedure for both"). Of particular relevance here, one such pre-merger era statute was the MUAA.

At common law, courts did not have jurisdiction to enforce an agreement to arbitrate, so a party could disregard a binding arbitration clause and plow ahead with a lawsuit. *Am. Bank Holdings, Inc. v. Kavanaugh*, 436 Md. 457, 471-72 (2013). But, if the parties did submit their dispute to binding arbitration, the circuit court had jurisdiction over an action to enforce the resulting arbitral award. *See id.* That asymmetry was re-balanced with the enactment of the MUAA.

The MUAA was enacted in 1965 and first codified in Article 7, Sections 1-23 of the Maryland Code (1957, 1968 Repl. Vol.). In 1973, the MUAA was recodified into Title 3, Subtitle 2 of the newly created Courts Article, *Am. Bank Holdings, Inc.*, 436 Md. at 473-

11

74, which went into effect on January 1, 1974. *Smith v. Wakefield, LP*, 462 Md. 713, 727 (2019).

Due to the perceived efficiency, cost savings, and procedural simplicity of arbitration, the MUAA "expresses the legislative policy favoring enforcement of agreements to arbitrate." *Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 641 (2003). The "MUAA's purpose was 'to provide for enforcement of written agreements to submit existing and future controversies to arbitration, to provide for court proceedings to compel or stay arbitration pursuant to written agreements,' and 'to provide procedures by which arbitration may be had' in Maryland." *Am. Bank Holdings, Inc.*, 436 Md. at 471-72 (quoting 1965 Maryland Laws, Chapter 231). In abrogation of common law, the MUAA provides that an agreement to arbitrate future controversies "confers jurisdiction on a court to enforce the agreement and enter judgment on an arbitration award." CJ § 3-202; *see also* CJ § 3-206(a). The MUAA also provides that an arbitration agreement is "valid and enforceable, and is irrevocable, except upon grounds that exist at law or in equity for the revocation of a contract." CJ § 3-206(a).

Given its legislative purpose, it should come as no surprise that under the MUAA, the court has always acted as a court of equity.[7] Indeed, when it was first enacted in 1965, the MUAA provided:

---

[7] Park Plus acknowledges that the court acts as a court of equity under the MUAA, and, on that basis, argues that the courts below should have applied "equitable principles including laches, waiver and estoppel." Park Plus maintains that by failing to appreciate the equitable role of the court, "the Circuit Court and the [CSA] panel—as well as the

(continued . . .)

12

*The term "court" means the circuit court for a county sitting in equity* or the Circuit Court or Circuit Court No. II of Baltimore City of this State. The court shall make any determination provided for herein without a jury. The making of an agreement described in Section 1 providing for arbitration in this State confers jurisdiction on the court to enforce the agreement under this article and to enter judgment on an award thereunder.

Maryland Code Art. 7, § 16 (1957, 1968 Repl. Vol.) (emphasis added). The definition of "court" did not change when the MUAA was recodified in the Courts Article. CJ § 3-201(b) ("'Court' means a court of equity."); *Am. Bank Holdings, Inc.*, 436 Md. at 474 ("No substantive changes [to the MUAA] were intended during the recodification process[.]"). Thus, the relief available under the MUAA to enforce an arbitration agreement—an order compelling arbitration—is, and always has been, equitable, *Am. Bank Holdings, Inc.*, 436

---

(. . . continued)
[CSA] panel in the *Gannett Fleming* case—each took the wrong path and therefore struggled fruitlessly with the assumption that there must be a separate statute-of-limitations period for breach of a promise to submit to arbitration." However, Park Plus did not raise a laches defense to Palisades' petition, but instead put all its eggs into the statute of limitations basket. Accordingly, whether laches would have applied to Palisades' petition is not before this Court. *See* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.").

Md. at 476-77, which explains why actions to enforce arbitration agreements were historically filed in a court of equity.[8]

### *The Role of the Circuit Court in Arbitrable Disputes*

The court's enforcement power over arbitration agreements can be invoked in two ways. *First*, when one party refuses to arbitrate, the party seeking arbitration may petition the circuit court to compel arbitration. CJ § 3-207(a).[9] *Second*, when one party initiates or threatens to initiate an arbitration proceeding, the resisting party may petition the court to

---

[8] *See, e.g.*, *Litton Bionetics, Inc. v. Glen Constr. Co.*, 292 Md. 34, 38-39 (1981) ("Litton filed a petition . . . on the equity side of the Circuit Court for Montgomery County. The relief sought was a declaratory judgment that the [] arbitrations be consolidated and that a mandatory injunction be issued . . . ."); *Coleman v. Columbia Credit Co.*, 42 Md. App. 198, 201 (1979) ("The Uniform Act further provides, [i]nter alia, for the review and enforcement of arbitration orders for which jurisdiction is vested exclusively in the equity courts."); *Joseph F. Trionfo & Sons, Inc. v. Ernest B. LaRosa & Sons, Inc.*, 38 Md. App. 598, 609 (1978) ("[A]ppellant should have separately petitioned in equity for an order compelling arbitration."); *Bel Pre Med. Ctr., Inc. v. Frederick Contractors, Inc.*, 21 Md. App. 307, 312 (1974) ("On 22 March 1973 the contractor recorded a mechanic's lien . . . and on 30 April 1973 filed a bill in equity to foreclose on the lien. On 22 May 1973 the owner made a demand upon the contractor for arbitration . . . .").

[9] CJ § 3-207 provides:

(a) If a party to an arbitration agreement described in § 3-202 of this subtitle refuses to arbitrate, the other party may file a petition with a court to order arbitration.

(b) If the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists.

(c) If the court determines that the agreement exists, it shall order arbitration. Otherwise it shall deny the petition.

stay the arbitration. CJ § 3-208(a).[10] In either case, the court must expeditiously determine, without a jury, whether an arbitration agreement for the specific dispute exists. CJ §§ 3-204,[11] 3-207(b), 3-208(c); *Gold Coast Mall, Inc. v. Larmar Corp.*, 298 Md. 96, 104 (1983).

If an arbitration agreement *does* exist, the court must enforce it by ordering the parties to arbitrate. CJ §§ 3-207(c), 3-208(c); *Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 546 (1994). This is so even if the court believes that "the claim in issue lacks merit or bona fides" or that "a valid basis for the claim sought to be arbitrated has not been shown." CJ § 3-210. Put simply, if the right to arbitrate exists, the MUAA provides the equitable remedy for enforcing it, and the court's work at that stage is done.

The issue of the existence of an arbitration agreement includes not only whether the arbitration agreement applies to the dispute, but also whether the right to arbitrate was

---

[10] CJ § 3-208 provides:

(a) If a party denies existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings.

(b)(1) A petition to stay arbitration shall be filed with the court where a petition to order arbitration has been filed.

(2) If a petition for order to arbitrate has not been filed, the petition to stay arbitration may be filed in any court subject to venue provisions of Title 6 of this article.

(c) If the court determines that existence of the arbitration agreement is in substantial and bona fide dispute, it shall try this issue promptly and order a stay if it finds for the petitioner. If the court finds for the adverse party, it shall order the parties to proceed with arbitration.

[11] CJ § 3-204 states: "The court shall make any determination provided for in this subtitle without a jury."

waived. *Stauffer Constr. Co v. Bd. of Educ.*, 54 Md. App. 658, 666 (1983). Here, whether the contract dispute falls under the arbitration provision is not disputed. Rather, the existential question raised by Park Plus is whether the statute of limitations operated as a waiver of Palisades' right to arbitrate.

Waiver is "the intentional relinquishment of a known right." *Charles J. Frank, Inc. v. Associated Jewish Charities of Balt., Inc.*, 294 Md. 443, 449 (1982) (quoting *BarGale Indus., Inc. v. Robert Realty Co.*, 275 Md. 638, 643 (1975)). A party's intention to waive the right to arbitrate "must be clearly established and will not be inferred from equivocal acts or language." *Id.* at 449. A court's analysis is fact-specific. *Id.* When waiver is found, it is as if the agreement to arbitrate never existed, and the court will deny the petition to compel arbitration. *See, e.g.*, *Commonwealth Equity Servs., Inc. v. Messick*, 152 Md. App. 381, 404 (2003); *RTKL Assocs., Inc. v. Four Villages Ltd. P'ship*, 95 Md. App. 135, 144-45 (1993).

### *Timeliness as a Waiver Issue*

A waiver can occur in various ways. The mode of waiver claimed by Park Plus is the failure to make a timely demand for arbitration. As Park Plus observes, the timeliness of a demand for arbitration is an issue for the court to decide. *See Frederick Contractors, Inc. v. Bel Pre Med. Ctr., Inc.*, 274 Md. 307, 314 (1975); *Allstate Ins. Co.*, 374 Md. at 646 (citing *Chesapeake Beach v. Pessoa Constr. Co.*, 330 Md. 744, 748 (1993)). Recognizing the court must first determine whether an arbitration agreement exists, Park Plus frames this issue in such terms, contending that Palisades' failure to demand arbitration "before the statute of limitations had run on its substantive claim" extinguished its right to arbitrate.

16

That timeliness is for the court to decide is true only "insofar as it requires a determination of whether an agreement to arbitrate still exists based on possible waiver." *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 141 (2002) (cleaned up) (quoting *Rosecroft Trotting & Pacing Ass'n, v. Elec. Race Patrol, Inc.*, 69 Md. App. 405, 413 (1986)); *see also Chesapeake Beach*, 330 Md. at 748-49; *Allstate Ins. Co.*, 374 Md. at 646. Timeliness becomes a waiver issue when the parties' contract includes a limitations period for demanding arbitration. In *Bel Pre*, for example, the arbitration agreement required the demand for arbitration to be filed within a "reasonable time" after the claim had arisen but in "no event" after the claim would be barred by the "applicable statute of limitations." 274 Md. at 311. There, we concluded that the demand for arbitration was timely filed under the contract, so the arbitration agreement continued to exist. *Id.* at 315-16.

Similarly, other Maryland cases that have addressed the timeliness issue have involved contractual time limitations, including provisions that, as was the case in *Bel Pre*, expressly incorporated the statute of limitations. *See, e.g.*, *Hilliard & Bartko Joint Venture v. Fedco Sys., Inc.*, 309 Md. 147, 165 (1987) (holding that an action was time-barred by the statute of limitations when an arbitration agreement specifically provided that a statute of limitations applied); *Sisters of Mercy of the Union in the U.S. v. Gaudreau, Inc.*, 47 Md. App. 372, 374-76, 379 (1980) (barring an action due to the statute of limitations that was explicitly provided in their arbitration agreement). These cases reflect the freedom of contract principle that parties may determine for themselves how much time must pass before the right to arbitrate is waived. *See Kreter v. HealthSTAR Commc'ns, Inc.*, 172 Md.

17

App. 243, 262-63 (2007) (recognizing the parties' freedom of contract in drafting arbitration provisions). Here, the arbitration provision in the contract has no time limitation.

## CJ § 5-101

As Park Plus sees it, if the contract is silent on the subject, the statute of limitations under CJ § 5-101 steps into the void and extinguishes the right to arbitrate just as a contractual limitation provision would. This proposition rests on a misunderstanding about the legal effect of statutes of limitations. Statutes of limitations have historically been considered procedural, not substantive defenses, and are generally understood to extinguish the *remedy* for enforcing a right, not the right itself.[12] *See Frank v. Wareheim*, 177 Md. 43, 58-59 (1939); s*ee also Anderson v. United States*, 427 Md. 99, 118 (2012) ("Statutes of limitations promote judicial economy and fairness, but do not create any substantive rights in a defendant to be free from liability."). So, if Park Plus and Palisades had not included the arbitration provision in the contract, then Palisades could have filed a complaint seeking monetary damages in the circuit court instead of a petition to compel

---

[12] This explains the basis for Maryland Rule 2-101(b):

> Except as otherwise provided by statute, if an action is filed in a United States District Court or a court of another state within the period of limitations prescribed by Maryland law and that court enters an order of dismissal (1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) *because the action is barred by the statute of limitations required to be applied by that court*, an action filed in a circuit court within 30 days after the entry of the order of dismissal shall be treated as timely filed in this State.

(Emphasis added.) Implicit in this rule is that the statute of limitations extinguishes only the remedy, not the right.

18

arbitration. In that scenario, the statute of limitations could have extinguished the *remedy* of a circuit court action, resulting in its dismissal.

But because the parties *did* include an arbitration provision and given the limited nature of our role, the only substantive right we are concerned with here is the contractual right to arbitrate, not Palisades' contractual right to a functioning parking system. Based on our traditional understanding of statutes of limitations, the expiration of the statute of limitations did not extinguish Palisades' right to arbitrate. And, as discussed above, when the court finds that an arbitration agreement exists, the MUAA confers the necessary equitable jurisdiction on the court to provide a remedy for enforcing that right—an order compelling arbitration.

The history and text of CJ § 5-101 confirm that it does not apply to the remedy for enforcing the contractual right to arbitrate. Our objective in construing statutes is to understand and implement the General Assembly's intent. *Stoddard v. State*, 395 Md. 653, 661 (2006). We start with the statute's plain language and apply the natural and commonly understood meaning of its words. *Gillespie v. State*, 370 Md. 219, 222 (2002). If the words are clear and unambiguous, we aim to "apply the statute as it reads." *Id.* at 222. We also refer to the legislative history to confirm our understanding of an unambiguous provision. *Hammonds v. State*, 436 Md. 22, 48 (2013); *Adamson v. Corr. Med. Servs., Inc.*, 359 Md. 238, 251-52 (2000).

The predecessor to CJ § 5-101 was Article 57, § 1 of the Maryland Code, which provided a three-year statute of limitations for specific causes of action. *Daughtry v. Nadel*, 248 Md. App. 594, 606 (2020). During the recodification process that produced the Courts

19

Article, the Governor's Commission to Revise the Annotated Code ("Commission") determined that some causes of action listed in Article 57, § 1 were "either obsolete or obscure." *Tipton v. Partner's Mgmt. Co.*, 364 Md. 419, 440 (2001) (quoting Commission Report No. 3F to the General Assembly, at 41 (July 16, 1973)). The Commission found it "possible that in enacting some modern statutory causes of action which do not fit within the old forms of action, the legislature may have neglected to provide specific statutes of limitations." *Id.* Thus, rather than list the causes of action subject to the limitations period, the Commission established "a blanket three year provision, with exceptions for other limitations . . . ." *Id.* at 441 (quoting CJ § 5-101 Revisor's Note).

The blanket three-year statute of limitations that emerged from the recodification process was placed in Title 5 of the Courts Article at § 5-101, and provides:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

Under this section's plain language, the object of the limitations period—that is, the "thing" that must be filed within the proscribed three-year period—is a "civil action at law." As we stated earlier, historically a "civil action at law" was filed in a court of law, and the remedy was monetary damages. *Higgins*, 310 Md. at 540; *see also Daughtry*, 248 Md. App. at 625 (explaining that CJ § 5-101, which applies only to actions at law, does not apply to foreclosure actions). In contrast, under CJ § 3-201, the court sits as a court of equity. Construing CJ § 5-101 and the MUAA together, we have no difficulty concluding that the former does not apply to petitions filed under § 3-207 of the latter. *See Ingram v.*

20

*State*, 461 Md. 650, 666 (2018) ("[W]e must strive to construe harmoniously the statutes to give as full effect to each as possible.").

Our conclusion is buttressed by the historical context in which both statutes were enacted. The Courts Article was enacted in 1973, well before the merger of law and equity courts—indeed when it mattered greatly whether an action was considered "at law" or "in equity." And the Courts Article was organized in a way that put the MUAA and the limitations periods in proximity to each other—the former in Title 3 and the latter in Title 5. So, we must presume that when it limited the reach of CJ § 5-101 to "civil actions at law" as it simultaneously empowered only courts of equity to enforce arbitration agreements, the General Assembly knew precisely what it was doing. *See Peterson v. State*, 467 Md. 713, 727 (2020) (confirming presumption that General Assembly "meant what it said and said what it meant") (cleaned up). Section 5-101 of the Courts Article, therefore, does not apply to the petition filed by Palisades.[13]

---

[13] Accordingly, we reject Park Plus's argument that the CSA decided *Gannett Fleming* incorrectly. In its well-reasoned opinion, the CSA determined that the right to arbitrate had not been waived and that an arbitration proceeding is not a "civil action[] at law"; therefore, CJ § 5-101 did not provide a basis on which the circuit court could enjoin the arbitration proceeding. *Gannett Fleming*, 243 Md. App. at 397-398. In reaching that conclusion, the CSA observed that Maryland Rule 1-202(a) defines "action" as "all the steps by which a party seeks to enforce any right in a court or all the steps of a criminal prosecution." *Id*. at 397. Thus, the CSA reasoned, a "civil action at law" refers only to court proceedings, to the exclusion of arbitration proceedings. *Id*.

Park Plus contends that the CSA interpreted Rule 1-202(a) too narrowly, and that "action" should be construed to include arbitration proceedings. We disagree. On its plain language, the definition of "action" includes only those activities that take place in court, and therefore does not include arbitration proceedings. This interpretation is reinforced by Rule 2-101, which states, "[a] civil *action* is commenced by filing a complaint with a

(continued . . .)

*Honoring the Terms of the Contract*

Park Plus argues if we don't apply the statute of limitations to a petition to compel arbitration, we would be re-writing the parties' agreement to include a statute of limitations waiver where none exists and to delete the contract's choice of law provision requiring application of Maryland law. We disagree. When Park Plus and Palisades executed the contract with a binding arbitration clause, they agreed to the limitations imposed by Maryland law on the nature and scope of the court's involvement over arbitrable disputes. As discussed above, when faced with a petition to compel arbitration, the court's only function is to decide whether an agreement to arbitrate the dispute exists, and, if so, to enforce it with an order compelling arbitration. Also, CJ § 5-101 applies only to civil actions at law, therefore it does *not* apply to petitions to compel arbitration. Thus, our holding honors the parties' agreement and applies Maryland law precisely as the General Assembly intended.

**Kumar v. Dhanda**

Park Place argues that our decision in *Kumar v. Dhanda*, 426 Md. 185 (2012), compels a contrary result. That case involved litigation between a medical practice and

---

(. . . continued)
court." (Emphasis added).

Moreover, Park Plus's expansive definition of "action" under Rule 1-202(a) does not survive scrutiny under the Maryland Constitution. Under Article IV, Section 18 of the Maryland Constitution, this Court's rulemaking authority extends only to "appellate courts and . . . the other courts of" Maryland. Arbitration proceedings do not take place in Maryland courts. We decline Park Plus's invitation to adopt an interpretation of "action" that rests on the premise that the Court ventured beyond the scope of its authority in adopting Rule 1-202(a).

one of its former physicians. *Id.* at 189. The contract required the parties, as a condition precedent to suing in court, to first submit any disputes to *non-binding* arbitration. *Id.* at 190. The medical practice alleged, among other things, that its former physician violated her covenant not to compete, and successfully petitioned to compel arbitration of that claim. *Id.* at 191. The medical practice disagreed with the arbitrator's non-binding decision and filed a civil action in a circuit court. *Id.* at 191-92. The court found that the civil action was barred by the three-year statute of limitations under CJ § 5-101. *Id.* at 203-04. This Court affirmed, holding that the non-binding arbitration neither delayed the accrual of the cause of action nor tolled the statute of limitations. *Id.* at 210.

Park Plus maintains that the circuit court erred in applying the statute of limitations to Park Plus's refusal to arbitrate rather than the accrual of the breach of contract claim. That is, trying to analogize from *Kumar*, Park Plus argues that the delays experienced by Palisades in starting the arbitration did not toll either the accrual of the breach of contract claim or the limitations period any more than the time spent in non-binding arbitration tolled the accrual of the cause of action and deadline to file suit in *Kumar*. So, Park Plus argues, because this Court held in *Kumar* that the statute of limitations was not tolled by the non-binding arbitration, the same result is required here.

The problem with Park Plus's argument is that its premise—that the statute of limitations for the breach of contract claim applies to the petition to compel arbitration— is incorrect for the reasons explained above. In *Kumar*, the statute of limitations issue was whether the *remedy* of a civil action for damages was extinguished by the passage of time. Because the plaintiff in *Kumar* filed a civil action at law beyond the three-year limitations

23

period, the answer was yes. Here, under the MUAA, the statute of limitations question is whether the *right* to arbitrate the breach of contract claim was extinguished—and therefore waived—by the passage of time. Because CJ § 5-101 does not extinguish the contractual right to arbitrate, the issues of the accrual of the cause of action and tolling of statute of limitations do not come into play here as they did in *Kumar*. Accordingly, we agree with the circuit court and the CSA that *Kumar* is inapplicable here.

### Alleged Errors in Arbitration Proceeding

Park Plus contends that the circuit court's decision presented the arbitrator with "confusing guidance" that created the "impression that the [circuit court] had decided any substantive statute-of limitations issue." As a result, Park Plus maintains that the arbitrator manifestly disregarded Maryland law or erred under CJ § 3-224 by refusing to consider Park Plus's statute of limitations defense. Park Plus also asserts other defects in the proceedings before the arbitrator, as well as in the circuit court's ultimate confirmation of the arbitrator's award. None of those issues, however, are properly before us as this matter comes to us on an appeal from the order compelling arbitration.[14] *See* Md. Rule 8-131(a).

---

[14] This opinion does not preclude an arbitrator from determining the timeliness of the substantive claim to be arbitrated. As observed by the CSA in *Gannett Fleming*, 243 Md. App. at 405:

> the arbitrator may still decide that [the claimant's] substantive claim is untimely, even if the demand for arbitration was not. As this Court explained in *Rosecroft Trotting & Pacing Ass'n*, 69 Md. App. at 413, 518 A.2d 137:

>> [T]imeliness of a claim to arbitrate is not equivalent to timeliness of the substantive claim to be arbitrated. The former requires a

(continued . . . )

**CONCLUSION**

The narrow issue before us is whether the circuit court correctly granted the petition to compel arbitration filed under CJ § 3-207. Faced with such a petition, the Court's task is to determine whether an agreement to arbitrate the dispute exists. CJ § 5-101 neither extinguishes the substantive contractual right to arbitrate nor the remedy conferred by the MUAA—an order compelling arbitration—to enforce that right. We therefore hold that when the contract is silent on the issue, a petition to compel arbitration under CJ § 3-207 is not subject to a defense under CJ § 5-101.

We can now answer the specific questions presented by Park Plus as follows: (1) neither the circuit court nor the CSA erred in finding that *Kumar* is inapplicable here; (2) the CSA did not err in applying *Gannett Fleming* in affirming the circuit court; (3) a petition to compel arbitration under CJ § 3-207 is not subject to the limitations period under CJ § 5-101; and (4) any claims of error in decisions made by the arbitrator or the circuit court's subsequent confirmation of the arbitral award are not properly before us and therefore, they are not addressed in this opinion.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

(. . . continued)
> determination of whether an agreement to arbitrate still exists based on possible waiver and is a proper issue for the court. The latter requires factual determinations as to ... when these specific incidents occurred, and whether, based on the time of the occurrences, they may be the subject of arbitration. The resolution of such matters falls within the province of the arbitrator, and not the court..

25